IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph J. Burns | : | |
| | : | Chapter Seven |
| Debtor | : | Case No. 5-07-bk-50140 RNO |
| | | |
| Erma Malo | : | |
| | : | Adv. No. 5-07-ap-50119 RNO |
| Plaintiff | : | |
| | : | |
| v. | : | **{Nature of Proceeding:** Second Amended |
| | : | Complaint Objecting to Discharge pursuant |
| Joseph J. Burns | : | to § 523(a)(2)(A)**}** |
| | : | |
| Defendant | : | |

# **Opinion**[1]

Presently pending before the Court is the Plaintiff, Erma Malo's, Complaint to determine the dischargeability of her unsecured debt.[2] Mrs. Malo alleges the Debtor fraudulently induced her to enter into a contract for him to remodel portions of her home. Mrs. Malo paid the Debtor a total of $37,518.00 in contract deposits.

Mrs. Malo seeks to have the debt deemed nondischargeable under 11 U.S.C. § 523(a)(2)(A)[3] on grounds the debt was incurred by false pretenses, false representations or fraud. A consolidated, two-day trial[4] was held on this matter beginning June 3, 2008. For the

---

[1]Drafted with the assistance of Kathryn F. Evans, Law Clerk.

[2]Debtor's Schedule F of Unsecured Creditors lists Plaintiff as holding a disputed claim in an unknown amount and describes the claim as "Dispute involving Custom Construction".

[3]Although the Complaint alleged non-dischargeability under 11 U.S.C. § 523(a)(2)(A), (a)(6) and (a)(7), the Plaintiff only pursued the (a)(2)(A) claim at trial and, therefore, the Court refrains from ruling on the other causes of action under the doctrine of judicial restraint. Similarly, the Debtor's Answer raised a counterclaim seeking damages of $11,840.00, together with costs; however, the Debtor presented no evidence to substantiate the amounts sought and, as such, the Court deems this counterclaim waived.

[4]This matter was consolidated for trial with two other matters, *Litchofski v. Burns* Case No. 5-07-ap-50123-RNO (Bankr. M.D.Pa. 2007) and *Commonwealth v. Burns* Case No. 5-07-ap-50121-RNO (Bankr. M.D.Pa. 2007) pursuant to Fed. R. Bankr. P. 7042(1).

-1-

reasons stated herein, the debt owed to the Plaintiff, Erma Malo, is nondischargeable under 11 U.S.C. § 523(a)(2)(A).[5]

**Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter pursuant to 28 U.S.C. § 157 (b)(2)(A), (I) and (O).

**Facts**

The Debtor has been in construction for a majority of his life. He testified he entered the field when he was just ten years old and worked under his father. He has continued to work in the industry for at least the past forty years. He characterized his construction experience as having "done everything", including work on commercial buildings, residential buildings and even building houses from the ground up. The Debtor testified he has taken courses at Penn State University and he continues to attend building trade shows.

Erma Malo, is an eighty-six-year-old widow who lives alone in the Borough of Clarks Green, Pennsylvania. Plaintiff's daughter, Christine Malo, lives approximately two miles away and was living with her mother during the time in question while Christine Malo recovered from rotator cuff surgery. Sometime around Thanksgiving, 2006, Christine Malo was introduced to the Debtor by one of Erma Malo's neighbors. Shortly thereafter, Erma Malo and the Debtor entered into negotiations to build a sunroom above her garage. Christine Malo participated in all the transactions between the Debtor and her mother because of Erma Malo's limited hearing abilities.

During the negotiations, the Debtor represented to the Malos that he was a licensed contractor who had done a lot of work in the Wilkes-Barre area. He showed the Malos a large glossy binder full of pictures of various commercial buildings that he represented to them he had worked on. The Debtor also showed the Malos pictures of residential construction he had done and pictures of him next to what looked like very important people. The Debtor told the Malos that he had received awards from various business bureaus in recognition of the excellent work he had done. He further represented to the Malos that he would take care of everything

---

[5]Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

Case 5:07-ap-50119-RNO    Doc 34    Filed 07/11/08    Entered 07/11/08 10:59:26    Desc
Main Document      Page 2 of 8

necessary to accomplish the remodeling job, including getting the necessary architectural drawings in order to obtain the necessary building permits from Clarks Green Borough. After the initial negotiations, sometime around December 15, 2006, the Malos signed a "Work Authorization Form"[6] (hereinafter "Contract") prepared by the Debtor, at which time Erma Malo presented the Debtor with a check for $1,000.00. The Contract was silent as to who was to procure required permits. (Def.'s Ex. 2).

Christine Malo testified that she confronted the Debtor multiple times about the lack of a building permit but that he would reply "I'm doing the paperwork; we'll get it in." Christine Malo's long-time boyfriend, David Jacobosky[7], also testified he confronted the Debtor directly multiple times in December, 2006 and January, 2007 about the lack of a permit. The Debtor told Mr. Jacobosky at least twice he did not have the permit yet because his "architect was still working on the drawings." Also, one of the subcontractors working under the Debtor, Robert William Shaffer, testified that he too questioned the Debtor about the lack of permit. Mr. Shaffer testified that typically the permits are displayed in the window and normally an inspector regularly inspects each phase of any work to ensure compliance. Mr. Shaffer noted that he raised an eyebrow to the fact that inspections were not occurring at the Malo work site, given that it was his personal experience that each building phase normally required an inspection before he could move on to the next phase. Mr. Shaffer testified that when he asked the Debtor if there was a permit, the Debtor first told him that he already had the permit. Later, the Debtor changed his story and told Mr. Shaffer he was waiting for the owner to go to the Borough and

---

[6] Post-petition, Debtor had the Malos sign a handwritten addendum which appears to evidence that they still owed him $9,000.00 and that they were to pay for the cost of obtaining the necessary permits. Although both the Malos verified the signatures on the document were theirs, Christine Malo could not recall with any specificity when they signed the document and did not appear to recognize it. Erma Malo also noted it was her signature on the document; however, when the document's contents were explained to Erma Malo, she appeared visibly surprised at its contents. Further, the Court questions the veracity of this document since its chain of custody is unknown and it appears to the Court that there are different portions written by persons with very distinct handwriting. For example, the portion which says "Owner Responsible For Fees and Permit" appears to be written with a different pen by a different author than the rest of the document. Ultimately, because this Contract was post-petition, and questions regarding its chain of custody exist, the Court finds its relevance to the Debtor's pre-petition fraudulent conduct to be minimal.

[7] Jacobosky regularly resides in Waterbury, Connecticut where he is an officer for the Internal Revenue Service. He testified he visited the Malos' home approximately every two weeks and had dealt with the Debtor in connection with the construction project at issue.

sign for the permit. Lastly, the sole permit officer for the Borough testified that he had never met with nor spoken to the Debtor about getting a permit.

In addition to the permit procurement problems, there were also significant problems with the quality of the Debtor's work. Both Christine Malo and David Jacobosky testified that they spoke to the Debtor on multiple occasions about problems with the construction of the new sunroom. On one particular occasion, when Christine Malo confronted the Debtor about the water leaking into the sunroom because the roof had not yet been installed, he laughed at her and told her she had a water phobia. Both Christine Malo and David Jacobosky testified extensively about the poor quality of the workmanship, including the floor of the sunroom consisting of wood chips nailed together. They testified that on multiple occasions, they confronted the Debtor about the problems. Christine Malo testified the Debtor did not take her concerns seriously and, after she would confront him, he would try to smooth things over with her and her mother by bringing over little gifts, like flowers and pens. Mr. Shaffer testified about the troubles he encountered as a subcontractor on the job and stated the work was so poor that "I wouldn't even let him [Debtor] build a dog coop for me." Audio record: FTR Gold (June 3, 2008 at 12:00).

On January 15, 2007, Willard Ziesemer, the Code Enforcement Officer of Clarks Green Borough, sent Erma Malo a "Friendly Reminder" that she was in violation of Pennsylvania Uniform Construction Code and other local ordinances by continuing construction without a permit. (Pl.'s Ex. 2). Erma Malo, not understanding what the letter represented, set it aside with the rest of the construction paperwork and her daughter, Christine Malo, did not find out about that paper until around February, 2007. After Christine Malo became aware of the letter, she made an appointment with the Code Enforcement Officer for the Borough of Clarks Green and called the Debtor demanding to see the building permit. The Debtor did not initially return her call. Thereafter, Erma and Christine Malo met with the Zoning Enforcement Officer, Willard Zisesmer, on February 26, 2007. He gave them a copy of the paperwork they would need to complete for a permit. Additionally, the Borough issued a stop work order until a building permit was obtained. Erma Malo filled out her portion of the permit application and then Christine Malo left multiple messages for the Debtor stating they needed him to fill out his

-4-

portion of the work permit application[8]. Christine Malo testified the Debtor never answered those phone calls. The parties' relationship further deteriorated in March, 2007 when the Malos refused to allow the Debtor on their property to complete the project until a proper work permit could be obtained. Eventually, the Debtor filed suit against Erma Malo in state court.

On January 22, 2007, the Debtor filed chapter 13 bankruptcy. In the bankruptcy schedules, he misspelled Erma Malo's street address.

**Analysis**

Section 523(a)(2) provides, in pertinent part, that:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

The objecting party bears the burden of proving by a preponderance of the evidence that the instant debt should not be discharged. *In re Graham*, 973 F.2d 1089, 1098 (3d Cir. 1992) citing *Grogan v. Garner,* 498 U.S. 279, 288-89, 111 S.Ct. 654, 660-61 (1991).

**A) Dischargeability under § 523(a)(2)(A).**

To prevail in seeking an exception to a debtor's discharge of debt under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through representations which the debtor knew to be false; (2) the debtor possessed an intent to deceive; (3) the creditor justifiably relied on the false misrepresentation; and, (4) the creditor sustained damages as a result of the false misrepresentations. See, e.g., *In re Casini*, 307 B.R. 800, 815 (Bankr. D.N.J. 2004); *In re Redden*, 234 B.R. 49, 50 (Bankr. D.Del. 1999) (citing *In re Haining,* 119 B.R. 460, 463 (Bankr. D.Del. 1990)); *In re DeBaggis*, 247 B.R. 383, 389 (Bankr. D.N.J.

---

[8]Williard Zeismer, Code Enforcement Officer for the Borough of Clarks Green, testified that any contractor, prior to commencing work in the Borough, needed to either provide the Borough with proof of worker's compensation insurance via a Liability Insurance Certificate, or certify to the Borough via a notarized affidavit that he has no employees and the reason why.

-5-

1999); *In re Cohen*, 191 B.R. 599, 604 (D.N.J. 1996), aff'd, 106 F.3d 52 (3d Cir. 1997), aff'd, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The plaintiff must prove the above elements by a preponderance of the evidence. *In re Cohn,* 54 F.3d 1108, 1114 (3d Cir. 1995).

### 1) Did the Debtor Make False Representations with Intent to Deceive?

The false pretense or misrepresentation must be both material and made with the intent to deceive the party to whom it was directed. See *Field v. Mans*, 516 U.S. 59, 68, 116 S.Ct. 437, 442-43, 133 L.Ed.2d 351 (1995). Intent may be inferred from the totality of the circumstances of the case. *In re Cohn,* 54 F.3d at 1118-19.

The Court finds the Debtor fraudulently represented to the Malos that he would complete the home renovations in a professional manner. Looking to the totality of the circumstances in the months leading up to bankruptcy, I find the Debtor's conduct to warrant a finding of intentional fraudulent misrepresentation. Christine Malo, David Jacobosky, and Robert Shaffer[9] all testified to the substandard quality of the work done. The Court also finds suspect the Debtor's practice of bringing the Malos flowers and pens the day after any confrontation about the quality of the work. Further, I give great weight to the fact that the Malos, David Jacobosky, and Robert Shaffer all testified that they were told on separate occasions by the Debtor that the Debtor was in charge of obtaining the permit. All four witnesses testified they were told similar stories by the Debtor about how he had already gotten the permit, was working on getting the permit, or just needed to get the architectural drawings to finalize the permit. This was untrue given that the Clarks Green Borough Code Enforcement Officer had never even spoken to the Debtor. The Debtor was the sole witness to testify that it was actually Erma Malo who had the responsibility of procuring the building permit. The Court is rather incredulous that, if obtaining the permit were Erma Malo's responsibility, the Debtor would have commenced and continued the work without seeing a permit.

The Court can infer that the Debtor, a contractor with over forty years of experience in the construction industry, would know that a permit would be required before he would be allowed to begin work. Since the permit was a legal precondition to lawfully commencing

---

[9]It should be noted that, in coming to this conclusion, the Court did not consider any extra evidence presented by Mr. Shaffer that was properly stricken from the record. (Audio record: FTR Gold (June 3, 2008 at 12:01:36 p.m. to 12:02:03 p.m.).

-6-

Case 5:07-ap-50119-RNO    Doc 34    Filed 07/11/08    Entered 07/11/08 10:59:26    Desc
Main Document    Page 6 of 8

construction, I find the Debtor's misrepresentations concerning the permit to be particularly material. As such, I find Erma Malo has met her burden of establishing by a preponderance of the evidence that the Debtor made a materially false representation with the intent to deceive her.

### 2) Was Erma Malo's Reliance Justifiable?

The Supreme Court has held the term justifiable reliance for purposes of § 523(a)(2)(A) requires a plaintiff prove that she actually relied on the misrepresentations and that the reliance was justified. *Field v. Mans*, 516 U.S. at 74. Erma Malo stated that from the outset she did, in fact, actually depend on the Debtor's statements regarding his obtaining the necessary permit. Therefore, the remaining question is whether her reliance was "justified". The United States Supreme Court has adopted the definition of justification from the Restatement Second of Torts which stated: "justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than the application of a community standard of conduct to all cases." *Id.* at 71 *citing* Restatement (Second) of Torts, (1976) § 545A, Comment b. The question herein is whether Erma Malo, an eighty-six-year-old woman who is hard of hearing, was justified in relying on the Debtor's representations that he would complete the job in a workmanlike manner and procure all necessary permits. The Court answers that question with a resounding yes. The Court finds Erma Malo's reliance on the Debtor's representations that he would "take care of everything", his showing her photographs of previous jobs he had done, awards he had won, and photographs with him by what appeared to be important persons constitutes circumstances sufficient to justify her reliance on his representations, some of which proved to be materially false.

### 3) Did the Creditor Sustain Damages?

It is apparent to the Court that Erma Malo did suffer damages as a result of the Debtor's misrepresentations. However, almost no testimony was presented to the Court regarding actual monetary damages. Further, the instant parties are already involved in state court litigation over this exact issue. Therefore, given the pendency of the state court action, I will refrain from establishing a numerical amount of damages and I find only that any damages incurred by Erma Malo arising from the instant transactions with the Debtor are non-dischargeable under § 523(a)(2)(A).

An Order will be entered consistent with the foregoing Opinion.

Date: July 11, 2008

_Robert N. Opel, II, Bankruptcy Judge_ (BI)

*This opinion is electronically signed and filed on the same date.*